Mr. Chief Justice Shahkey,
dissenting:
The only question which this case presents, is whether the court of chancery has jurisdiction over the matters set out in the bill, after a default at law. In dissenting from the opinion expressed by a majority of the court, I shall endeavor to explain as briefly as possible the reasons on which I predicate my opinion. I do not propose to enter on a review of the numerous authorities cited to show the disputed boundary between courts of law and chancery, but will rely on grounds which I think are clearly tenable, without much aid from adjudged cases. The principles which divide the two jurisdictions, are neither obscure nor doubtful as they are laid down by law writers, and yet the exceptions to the general rule by repeated adjudications have become so numerous and so varied as almost to have destroyed the rule; but that there are cases in which either court may rightfully take jurisdiction originally, is very clear, and it is also true that there are cases in which the court of chancery may properly interpose after a judgment at law, and when too, the defence might have been made at law. The question is whether this is one of that description. In contending that it is, I shall assume two grounds and endeavor to maintain them. First, that when the contract is void by being contrary to a constitutional policy, the court of chancery has jurisdiction for the purpose of protecting the public policy; and second, that this contract being void by a constitutional provision, can never be enforced, and that a judgment predicated on it must also be void, and may be perpetually enjoined.
First. That all contracts which are against public policy are absolutely void, is a proposition undeniably true. Why I would ask are they so? The answer is plain; because the public have an interest in the subject matter of the contract. The whole community is interested in the suppression of vice and immorality, and every thing which tends to disturb the peace and harmony, or jeopardize the safety of society. Every law to some extent may be said to be a law of public policy, for every community is *147 interested in having a perfect system of laws for the protection of life, liberty and property. Good order is then a consequence, but there is a distinction between laws which secure private rights merely, and those which are intended to protect the interests of the whole community, as a community. In the first case the law looks no further than the rights of individuals, or of meum et tuum, and when it deals out justice between them, its object is accomplished, but in the latter case' mere private rights are overlooked and the law is adopted with a view to the general good, Public welfare is paramount to private right, and although each individual may take protection under such laws, yet he does so as a member of the community, having an interest in common with his fellow citizens in having them duly enforced. In cases of this description, public policy is in reality the leading object in the adjudication, and it is made exclusively with a view to guard that policy. As between'the individuals, the contract might be beneficial to both parties, and free from the taint of fraud or injustice, when tested by the rules which regulate private rights; but the public is the party beneficially interested, and the parties to the suit are the mere instruments through whom the community receives protection. Laws of policy must be viewed in this light, otherwise the public interest is lost sight of, and they become like all other laws, mere rules for the government of private rights. Suppose for instance that in the present controversy we can look no further than the respective rights of the parties, then it cannot be said to be a law of public policy:
A law cannot be one of public policy, unless the whole community have an interest in seeing it enforced; and if so, must not that interest be looked to and regarded in the adjudication, aud will not a court of chancery especially extend its aid to prevent a result prejudicial to tho public. To me it seems peculiarly proper that it should. The community should not suffer by the laches of the party to tho record. If there is an interest involved paramount to the interest of the immediate parties, there can be no reason for an application of the technical rule of requiring that the defence should have been made at law; the reason of tho rule ceases in a great degree, and so should its application. This is not a novel doctrine; we find repeated recognitions of it, a few *148 of which I will notice.. In the case of Snyder v. Dailey, 1 Randolph, 76, a bill was brought to enjoin a judgment at law, on a contract in violation of law; it was said by the court that the commonwealth, whose policy was violated in contracts of that kind, might be considered the real party, and on that ground the injunction was made perpetual, although the defence was full and complete at law. The case of McGuire v. Ashby, tried with the one above cited, was one of the same kind; and the court remarked, that courts of chancery, as well as courts of law, would interfere to prohibit the effects of contracts made in violation of public good. The case of Woodson v. Barret, 2 Hen. & Mun. 80, was a bill to enjoin a judgment recovered on a bond given for a gaming consideration. The question of jurisdiction was discussed, and yet the court did not hesitate to grant a perpetual injunction, although the defence was ample at law. The case of Skipwith v. Strother, 3 Randolph, 214, was also a bill to enjoin a judgment for a gaming consideration, and the injunction was made perpetual. In all these cases defence might have been made at law ; but as the contracts were in violation of a law of public policy, and absolutely void, the chancery court did not hesitate to take jurisdiction, and these ■ decisions are either not law, or my position is correct. In principle they do not differ from the case before ds, but if there be a difference, it must operate in favor of the present case, for this contract is void by the constitution.. These cases seem to me to be based on reason; hence I conclude that this case is a proper one for the interposition of a court of chancery, and this brings me to the second ground taken, to wit:
Second. That this contract being void by a constitutional provision, can never be enforced, and that a judgment predicated on it must also be void, and may be perpetually enjoined. In the case of Green v. Robinson, it was decided by this court, that a contract in all respects like this was void by virtue of the constitutional provision which prohibits the introduction of slaves into this state as merchandize. I do not assume too müch therefore, in saying that this contract was made in direct violation of the constitution. Now if it be void by the constitution, how can it ever ripen into a valid, contract ? The constitution is the para *149 mount law of the land, and nothing can contravene it. Certainly no law could give validity to a contract in violation of it, nor can even the judgment of the court give vigor to any thing which is paralyzed by its moral power.
In theory it is legally impossible that any thing, either contract or judgment, can be enforced which is confessedly unconstitutional. It is the circumference of our power, beyond which we cannot go. The judgment of the court can impart no validity to a contract which is unconstitutional. If it can, the authority of the court is superior to the constitution. Validity, I take it, it must have, before it can be enforced; it would not do for its to say the contract was void in the beginning, is void now, and must always continue so, and still enforce it. The law can only enforce obligations or duties, and one of these characteristics must attach before the law has any thing to operate on. We must therefore make this contract obligatory in some way before we can carry it out. By enforcing this contract, we do what ? we give validity to that which we admit has none of itself, and. which on the authority of the constitution never can have any. We say, that by the law the defence should have been made in the circuit court, and because it was not, the contract must be enforced, although it is against the supreme law.
By the constitution, all laws contrary to its provisions are void, and that law by which this contract is to be enforced, because the defence was not made in the circuit court, is certainly contrary to it, because it seeks to enforce that which the constitution forbids. The question stands thus: the constitution declares the contract void; we admit it: the law declares that it is not now void, because the defence was not properly made. Here is a conflict: which is to prevail? The position taken is, that although the contract is void, the judgment is binding; but I think a judgment which is against the constitution, is as much void as a contract of that description. No court has power to render such a judgment. It is the province of the courts to expound the constitution, and when the exposition is given every thing must yield to it; judgments as well .as contracts. We have expounded it as applicable to this contract, and. declared it void. If this position be true, I cannot imagine any way by which it can be *150 enforced. There is in this respect, a wide difference between contracts void by the constitution, and those which are void by law merely.
It must be remembered that the law is a science or system, the various parts of which form one complete whole. A contract may be void by one law, and still by other provisions of the same system, it may become valid, unless the proper mode be taken to establish its void character. One law may declare a contract void, another may declare how this shall be shown, and a third may provide that if it be not so shown at a particular time, it shall be binding. These are but parts of the same system, and in the practical use of that system, each part must be regarded. The one qualifies or limits the other. Now it is the case with many contracts void by law, that the defence must be pleaded, and if it is not, the contract will be enforced. Its void character is changed; chancery will not interfere, because the de-fence was at .law, and thus by the operation of the remedial part of the system, that which was void may sometimes become valid. Hence we often see contracts which were void, enforced. But it is not so with the constitution. It is not a system with counteracting provisions. It neither points out nor contains the means by which any thing declared void by one part of it, can become valid by another part; and as it does not, and as this contract is void by one part, so it must remain, notwithstanding our judgment. In the case of Woodson v. Barrett, above cited, Judge Tucker well remarked, “ when an instrument is absolutely void in its creation, it cannot, I conceive, be made valid by any subsequent transaction immediately arising out of it.” With how much more propriety may this be said of an instrument void by the constitution'.
By our statute, “ all promises, agreements, notes, bills, bonds, or other contracts, judgments, mortgages, or other securities, or conveyances whatsoever, made, given, granted, drawn, or entered into, or executed,” for money won at gaming, are declared to be utterly void. Now suppose a note be given for a gaming consideration, on which suit is brought, and judgment by default rendered. To enjoin this judgment a bill is brought; could we say to the complainant, we cannot entertain this suit, your remedy *151 was at law ? 1 think not. To do so would be to deny the authority of the statute, which says the judgment is void. 1 cannot be mistaken in saying that chancery would be bound to take jurisdiction, and on what principle would it do so ? because the judgment was void. Suppose the legislature should confer on the Roman Catholic priests the exclusive right to preach the gospel in this state, with power to sue for a breach of the law; suit is brought, and judgment by default is taken against one who has violated the law, would we enjoin it, or would we not ? I do not think we should hesitate; and on what principle? because the judgment would be void. It might be answered that a writ of error would lie in such cases ; probably it would; but suppose it was barred by the statute of limitations, or whether it was or not, I think the doctrine is now too well settled to be shaken, that a court of chancery will cancel that which is absolutely void, be it bond or judgment, for every one has a right to have even apparent incumbrances or clouds removed. But would such a ■ judgment be any more void than the one before us ? We have said that this contract was void by the constitution, and I know of no degrees in constitutional invalidity. In the case put, the law as the foundation of the action, would be void. In this case the contract as the foundation of the action is void. Now is a judgment better, founded on an unconstitutional contract, than one founded on an unconstitutional law ? This is the plain question. I cannot perceive that it is, and therefore adhere to the opinion which I entertained in the case of Green v. Robinson, that the case is proper for chancery cognizance.